## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| KELBY NELSON, | |
| Plaintiff, | |
| v. | |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, formerly NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING, a South Carolina LLC; SPECIALIZED LOAN SERVICING LLC, a Utah LLC; and FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR FREDDIE MAC SLST 2022-1, a Virginia Corporation, | Civil Action No. _____  DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

COMES NOW Plaintiff, Kelby Nelson, and files this Complaint against

Defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing, Select Portfolio

Servicing Inc., and Freddie Mac and in support thereof states as follows:

## JURISDICTION AND VENUE

1.      The United States District Court for the Northern District of Georgia

has jurisdiction of the federal claims herein under 28 U.S.C. §§ 1331 and 1332 and

12 U.S.C. § 2614. This court has jurisdiction of the pendent state claims under 28 U.S.C. § 1367(a).

2.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), and (c).

## THE PARTIES

3.      Plaintiff, Kelby Nelson, is and was at all material times, a resident of the State of Georgia, residing at 1699 Niskey Lake Road, Atlanta GA 30363 (the "Property").

4.      Defendant Newrez Servicing d/b/a Shellpoint Mortgage Servicing (hereinafter "Shellpoint") was the lender and servicer, from October 2016 through at least June 6, 2022, of the loan secured by the real property located at 1699 Niskey Lake Road SW, Atlanta, GA 30363. Shellpoint has a principal place of business in Greenville, South Carolina.

5.      Defendant Specialized Loan Servicing LLC, (hereinafter "Select Portfolio") has a principal place of business in Salt Lake City, Utah. Select Portfolio was Shellpoint's successor in interest as servicer, from some time after June 6, 2022, to September 1, 2022, of the loan secured by the real property located at 1699 Niskey Lake Road SW, Atlanta, GA 30363.

6.      Defendant Federal Home Loan Mortgage Corporation, as Trustee for Freddie Mac SLST 2022-1 (hereinafter, "Freddie Mac") is the current servicer of

the Mortgage secured by the real property located at 1699 Niskey Lake Road SW,

Atlanta GA, 30363. Freddie Mac has a principal place of business in McLean,

Virginia.

## FACTUAL ALLEGATIONS

7.      Nelson owns the single-family, residential property known as 1699

Niskey Lake Road SW, Atlanta, GA 30363 (the "Property"), and has solely owned

said property since 2003. (A true and correct copy of the conveyance deed is

attached as Exhibit A).

8.      Nelson executed a certain Security Deed and Promissory Note with

Mortgage Electronic Registration Systems, Inc. "MERS", as nominee for Synovus

Mortgage Corp. on February 13, 2004, in the amount of $323,000.00 securing the

Property (the Promissory Note and Security Deed collectively known as the

"Mortgage").

9.      Synovus was the original mortgage lender and servicer of the

Mortgage secured by the Property. (A true and correct copy of the Security Deed is

attached as Exhibit B).

10.     The Mortgage required monthly payments and required payment to an

escrow account for the purpose of assuring payment of all property taxes and

insurance premiums.

11.     MERS, as nominee for Synovus transferred and assigned the

Mortgage to JPMorgan Chase Bank, National Association on May 14, 2014. (A

true and correct copy of the May 14, 2014 Assignment of Security Deed is attached

as Exhibit C).

12.     JPMorgan Chase Bank, National Association transferred and assigned

the Mortgage to New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing,

on October 7, 2016. (A true and correct copy of the October 7, 2016 Assignment of

Security Deed is attached as Exhibit D).

13.     On May 4, 2018, JPMorgan Chase Bank files and records a Corrective

Assignment of Security Deed to New Penn Financial, LLC d/b/a Shellpoint

Mortgage Servicing. (A true and correct copy of the May 4, 2018 Corrective

Assignment of Security Deed is attached as Exhibit E).

14.     On October 29, 2018, Nelson executed a Loan Modification

Agreement with Shellpoint, modifying the terms of the mortgage and Note. (A true

and correct copy of the Modification Agreement is attached as Exhibit F).

15.     Upon information and belief, between June 2022 and August 2022 the

mortgage was transferred and assigned to Select Portfolio, who, transferred and

assigned the mortgage to Freddie Mac on September 1, 2022. (A true and correct

copy of the September 1, 2022 Corporate Assignment of Security Deed is attached

as Exhibit G).

16.     At all relevant times up to and including the present, Nelson made payments to the servicer of his loan and has had taxes paid through his escrow account.

17.      The City of Atlanta, among others imposes an annual tax for solid waste removal and processing, and such a tax was imposed in 2018 in the amount of $563.31.

18.     Shellpoint, being the mortgage servicer in 2018 failed to make necessary tax payments.

19.     At all relevant times, the escrow account held more than enough funds to pay the 2018 sanitation tax bill of $563.31.

20.     Beginning in 2018, and at least as of June 26, 2018, Nelson alerted Shellpoint to the outstanding tax bill and their failure to properly pay the same from escrow.

21.     In 2018, even after notification, Shellpoint did not satisfy the outstanding tax obligations.

22.     Beginning on May 1, 2019, the original tax amount of $536.31 began to accrue interest and fees.

23.     On April 23, 2019, the City of Atlanta placed a tax lien on the

Property. (A true and correct copy of the 2018 City of Atlanta, Georgia Fieri

Facias is attached as Exhibit H).

24.     Again, in December 2019, Nelson emailed Shellpoint to alert them

that they were not paying his property taxes as required.

25.     In 2019, even after multiple notifications Shellpoint did not satisfy the

outstanding tax obligations.

26.     On April 27, 2019, FIG Taxes, a third-party collection agency

purchased the tax lien. (A true and correct copy of the Transfer of the 2018 City of

Atlanta, Georgia Fieri Facias is attached as Exhibit I).

27.     On November 5, 2020, Nelson received a letter from FIG Taxes

which alerted him that they had purchased the tax lien with further interest and fees

now totaled at $773.02.

28.     In 2020, even after continued notifications, Shellpoint did not satisfy

the outstanding tax obligations.

29.     In late 2021, FIG Taxes levied on the Property, causing the Fulton

County Sheriff's Office to initiate procedures to collect the debt or list the property

for tax sale.

30.     On December 15, 2021, a notice was tacked to the Property by the

Fulton County Sheriff's Office alerting Nelson that a tax levy had been executed

against the Property.

31.     On December 17, 2021, Nelson received a letter from the Fulton

County Sheriff's Office notifying him that the 2018 tax debt remained unpaid, was

now valued at $1,238.43, and that a failure to remit this amount by February 1,

2022, would result in the Property being auctioned at tax sale.

32.     On December 28, 2021, Nelson again emailed Shellpoint, including

the content of the letter from the Fulton County Sherriff as well as forwarding a

pay-off statement form Fulton County Sheriff's Office and making Shellpoint

aware that his taxes still had not been paid.

33.     Shellpoint still – after more than four years of notifications from

Nelson - did not satisfy the outstanding tax obligations.

34.     On February 1, 2022, the Fulton County Sheriff's Office auctioned

Nelson's home to satisfy the outstanding tax bill.

35.     On June 1, 2022, Nelson forwarded all relevant documentation via

email to Shellpoint reiterating his prior notices that his taxes had not been paid,

that they had been levied, and that as he understood it, a tax sale was pending

(though it had in fact already occurred).

36.     On June 6, 2022, Shellpoint responded via email to Nelson, assuring

him that their tax department had researched the issue and confirming that his taxes

had been paid and the home removed from the threat of tax sale.

37.     This was not true, and despite the numerous notifications over more than five years Shellpoint still did not satisfy the outstanding tax obligations or redeem the Property.

38.     Upon information and belief, Shellpoint transferred the Mortgage with certain rights and obligations, including the servicing of the loan, to Select Portfolio sometime after June 6, 2022, but before September 1, 2022.

39.     Select Portfolio did not satisfy the outstanding tax obligations or redeem the Property.

40.     On September 1, 2022, Select Portfolio transferred the mortgage with certain rights and obligations, including the servicing of the loan, to the current servicer Freddie Mac.

41.     Freddie Mac did not satisfy the outstanding tax obligations or redeem the Property.

42.     The tax obligations, redemption amount and redemption penalty now total approximately $528,000.

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974, 12 U.S.C. § 2601 et seq.

43.     Nelson realleges and incorporates all the preceding allegations as if

fully restated in this Count.

44.     Section 6 of the Real Estate Settlement Procedures Act of 1974

("RESPA"), as amended by the Cranston-Gonzalez National Affordable Housing

Act, demands that the servicer of a federally related mortgage loan who

administers an escrow account make timely payments of property taxes from said

account as said taxes come due. 12 U.S.C. § 2605(g).

45.     Nelson's loan is a federally related mortgage loan within the meaning

of 12 U.S.C. § 2602(1)(A).

46.     Shellpoint was the servicer of the loan who initially failed make tax

payments on the Property, as it was responsible both for receiving payments

designated for tax payments and for actually making those tax payments.

47.     Shellpoint violated RESPA, 12 U.S.C. § 2605(g), by failing to make

timely property tax payments out of escrowed funds.

48.     Select Portfolio became the servicer of the loan following Shellpoint's

initial failure to make tax payments on the Property, but also failed to make tax

payments on or to redeem the Property and was responsible both for receiving

payments designated for tax payments and for actually making those tax payments.

49.     Select Portfolio violated RESPA, 12 U.S.C. § 2605(g), by failing to

make timely property tax payments out of escrowed funds.

50.     Freddie Mac became the servicer of the loan following Shellpoint's initial failure to make tax payments on the Property, but also failed to make tax payments on or to redeem the Property and was responsible both for receiving payments designated for tax payments and for making those tax payments.

51.     Freddie Mac violated RESPA, 12 U.S.C. § 2605(g), by failing to make timely property tax payments out of escrowed funds.

52.     RESPA makes violators of § 2605(g) liable to borrowers for any actual damages, as well as additional statutory damages if a pattern of noncompliance emerges. 12 U.S.C. § 2605(f). Costs and attorneys' fees are also provided for by the statute. *Id*.

53.      Nelson has suffered specific monetary damages as his home has been sold at tax sale and he is now forced to choose between foreclosure and eviction or paying $528,000, the sale price of $440,000 plus a 20% penalty - for a $536 unpaid tax bill.

54.     Nelson has suffered additional actual damages in the amount of time it took him to communicate with the Shellpoint and the Office of the Fulton County Tax Commissioner, in efforts to determine why his taxes were not paid and to demand Shellpoint pay the taxes and penalties before the county began a credit-damaging collections action and damage of a foreclosure proceeding listed on his

credit.

55.     Nelson has suffered additional damages in the form of the emotional distress caused by Shellpoint's failure to pay his taxes from escrow and misrepresentations that they had done so. Their failures resulted in Nelson receiving letters saying his home would be auctioned – a cause of great stress, then learning that despite Shellpoint's assurances that the taxes were paid, that his home had in fact had been auctioned, a Sherriff appear at his home and placing a notice of the sale on his door- a cause of shock and dismay, and being confronted by the home's purported "new owner" as they appeared at his door, further compounded by learning that instead of owing $536 in back taxes (for Shellpoint's failure) he now owed over half a million dollars and would be evicted if he did not pay.

56.     Defendants' failures to comply with RESPA have thus caused Nelson concrete and particularized harm.

## COUNT II
## BREACH OF CONTRACT

57.     Nelson realleges and incorporates all the preceding allegations as if fully restated in this Count.

58.     Under Georgia law, the security instrument's agreement to maintain an escrow account and to remit Nelson's owed property taxes to the City of Atlanta, constituted a contract between Nelson and Shellpoint.

59.     Shellpoint received, as valuable consideration, interest on the mortgage funds loaned and assurance that the property taxes and hazard insurance would be paid through the escrow account, reducing concerns about tax liens and insurance policy lapse.

60.     Nelson received, as valuable consideration, funds to refinance the property at 1699 Niskey Lake Road SW, Atlanta GA, 30363, and he also received the assurance that Shellpoint would ensure that taxes and insurance premiums would be paid in a timely manner.

61.     Shellpoint assumed from Synovus certain rights and obligations attached to the mortgage loan, including the servicing of the mortgage loan, when it purchased the loan from Synovus. Thus, Shellpoint had an obligation as transferee of the contract, and as servicer, to pay the property taxes in a timely manner out of the escrow account.

62.     Shellpoint breached its contractual obligation, causing foreseeable harm to Nelson in the form of tax sale costs and penalties.

63.     Shellpoint knew, having been put on notice by Nelson in the that his home would be sold at a tax sale, and he would be highly likely to suffer irreversible harm should they fail to make timely property tax payments.

64.     Select Portfolio assumed from Shell Point certain rights and obligations attached to the mortgage loan, including the servicing of the mortgage loan, when it purchased the loan from Shellpoint. Thus, Select Portfolio had an obligation as transferee of the contract, and as servicer, to redeem the Property.

65.     Select Portfolio breached its contractual obligation, causing foreseeable harm to Nelson in the form of tax sale costs and penalties.

66.     Freddie Mac assumed from Select Portfolio certain rights and obligations attached to the mortgage loan, including the servicing of the mortgage loan, when it purchased the loan from Select Portfolio. Thus, Freddie Mac had an obligation as transferee of the contract, and as servicer, to redeem the Property.

67.     Freddie Mac breached its contractual obligation, causing foreseeable harm to Nelson in the form of tax sale costs and penalties.

### COUNT III
### NEGLIGENCE/GROSS NEGLIGENCE

68.     Nelson realleges and incorporates all the foregoing allegations as if fully set forth under this Count.

69.     Shellpoint had a legal duty by contract, statute and practice, to remit property taxes to the City of Atlanta from Nelson's pre-paid escrow account.

70.     Shellpoint breached that duty when it failed to submit the property taxes on Nelson's behalf.

71.     Moreover, Shellpoint had a duty to communicate with Nelson honestly and accurately, and but for their statement to Nelson that they had paid the tax bill, Nelson would have self-paid the $536 tax liability and avoided the current damages.

72.     It is that failure, and only that failure, that proximately caused Nelson to incur additional debts, interest, costs, and penalties.

73.     Shellpoint's actions constitute gross negligence both in their failure to act to pay the taxes or redeem the property after multiple warnings by Nelson and their reckless disregard in making statements to Nelson that the taxes had been paid and the Sheriff's sale averted.

## COUNT IV
## PUNATIVE DAMAGES

74.     Nelson incorporates and realleges the preceding allegations as if fully stated herein.

75.     Defendants have acted with a conscious indifference to the consequences of their actions, in part, by repeatedly failing to pay Nelson's taxes after multiple warnings even when faced with the impending sale of the home, further by telling Nelson his taxes had been paid and the Sheriff's sale of his home would not take place; and by continually failing to redeem the property despite their obligation to do so.

76.     Defendants' actions, as outlined in this Complaint, demonstrate willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to the consequences thereof.

77.     Punitive damages are necessary to deter Defendants from further such wrongful acts, and should be awarded, jointly and severally, in an amount to be

determined by the enlightened conscious of the jury.

## COUNT V
## COSTS, EXPENSES, AND ATTORNEY'S FEES

78.     Nelson incorporates and realleges the preceding allegations as if fully

stated herein.

79.     Defendants have been stubbornly litigious, acted in bad faith, and

have caused the Plaintiff unnecessary delay and expense.

80.     As a result of Defendants' actions and inactions, the Plaintiff is

entitled to recover his reasonable attorney's fees and expenses under O.C.G.A. §

13-6-11.

WHEREFORE, Plaintiff Kelby Nelson requests the following:

1.     Trial by jury;

2.     That Plaintiff be awarded his actual, compensatory, and all other

damages against Defendants, jointly and severally, in an amount to be proven in

this case; and

3.     That this Court grant damages under 12 U.S.C. § 2605(f); and

4.     That Plaintiff be awarded punitive damages against Defendants,

jointly and severally, in an amount sufficient to deter further wrongful actions, as

determined by the enlightened conscious of the jury; and

5.     That all costs, expenses, and attorney's fees incurred in this case be

borne by Defendants, jointly and severally; and

6.     For such other relief as this Court deems just and proper.


This the 6th day of December 2022.

POOLE HUFFMAN, LLC

*/s/ Bryan J. Henderson*
Jon David W. Huffman
Georgia Bar No. 937966
Bryan J. Henderson
Georgia Bar No. 821624
3562 Habersham at Northlake
Building J, Suite 200
Tucker, Georgia 30084
Telephone: (770) 988-6546
Facsimile:  (888) 709-5723
jondavid@poolehuffman.com
bryan@poolehuffman.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF FONT AND POINT**

Pursuant to LR 7.1D., NDGa., the undersigned counsel certifies that the foregoing has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in LR 5.1C, NDGa.

```
Deed Book 35566 Pg  416
Filed and Recorded Jul-31-2003 12:28pm
       2003-0256472
Real Estate Transfer Tax $179.00
    Juanita Hicks
Clerk of Superior Court
    Fulton County, Georgia
```

Please Return to:
McCalla, Raymer, Padrick, Cobb, Nichols & Clark
Building 400, Suite 195
1000 Abernathy Road
Atlanta, GA  30328

Purchaser:   Kelby Nelson
Property:    1699 Niskey Lake Road, Atlanta, Georgia 30331

## LIMITED WARRANTY DEED

STATE OF
COUNTY OF

THIS INDENTURE, made this ___27th___ day of ___June___, 2003, in the year of our Lord Two  Thousand  and Three, between **S.I.B Mortgage a subsidiary of SI Bank and Trust sbm American Construction Lending Services, Inc** as party of the first part; and **Kelby Nelson**  as party of the second part.

WITNESSETH; that the said party of the first part, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto the said party of the second part, and assigns:

All that tract or parcel of land lying and being in Land Lot 45 of the 14th (F.F.) District, Fulton County, Georgia, being Lot 6 of Subdivision for Curtis E. Paris, as per a plat recorded in Plat Book 57, Page 125, Fulton County Georgia Records, to which plat reference is made for a more detailed description.  Property is commonly known as 1699 Niskey Lake Road S. W., Atlanta, Georgia 30331.

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the only proper use, benefit and behoof of the said party of the second part, and assigns, forever, IN FEE SIMPLE.

And the said party of the first part, for its successors and assigns, will warrant and forever defend the right and title to the above described property unto the said party of the second part. and assigns, against the lawful claims of all persons claiming by, through or under the party of the first part, but not otherwise.

IN WITNESS WHEREOF, the said party of the first part has hereunto set its hand and affixed its seal the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public

AIDA I. LIU
Notary Public, State of New York
No. 01LI6009671
Qualified in Richmond County
Commission Expires July 6, 2006

S.I.B Mortgage a subsidiary of SI Bank and Trust sbm
American Construction Lending Services, Inc
By: _____
Name: Jose A. Nieves
Title: Assistant Vice President
By: _____
Name:
Title:

(CORPORATE SEAL)

Exhibit A

Return To:

Return to:
Terry Brumlow, P.C.
P.O. Box 2500
Calhoun, GA  30703

Prepared By:

Rogers, Marcella
800 Shades Creek Parkway,
Birmingham, AL 35209

Deed Book 37127 Pg  316
Filed and Recorded Feb-27-2004 02:39pm
2004-0079806
Georgia Intangible Tax Paid $969.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

——————————————————[Space Above This Line For Recording Data]——————————————————

# SECURITY DEED
MIN 100085600020495670

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **February 13, 2004** together with all Riders to this document.
(B) "Borrower" is **KELBY V NELSON**

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02049567

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011  1/01

-6A(GA) (0005).02
Page 1 of 14          Initials:

VMP MORTGAGE FORMS - (800)521-7291

Exhibit B

Deed Book 37127 Pg 317

(D) "Lender" is Synovus Mortgage Corp.

Lender is a Corporation
organized and existing under the laws of Alabama
Lender's address is 800 Shades Creek Parkway, Suite 375, Birmingham, AL 35209

(E) "Note" means the promissory note signed by Borrower and dated February 13, 2004
The Note states that Borrower owes Lender three hundred twenty-three thousand and
00/100                                                                          Dollars
(U.S. $ 323,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2034
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider           ☒ Other(s) [specify]
                                                                GA Waiver of Borr's Rights

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____                                                    02049567

VMP®-6A(GA) (0005).02              Page 2 of 14                        Form 3011 1/01

Deed Book 37127 Pg 318

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County

|                                    | of    | Fulton, GA                      | : |
| [Type of Recording Jurisdiction]   |       | [Name of Recording Jurisdiction] |   |

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 45 of the 14th (F.F.) District, Fulton County, Georgia, being Lot 6 of Subdivision for Curtis E. Paris, as per a plat recorded in Plat Book 57, Page 125, Fulton County, Georgia Records, to which plat reference is made for a more detailed description. Property is commonly known as 1699 Niskey Lake Road SW, Atlanta, Georgia 30331.

Parcel ID Number:          14F0045LL052-4          which currently has the address of
1699 Niskey Lake Road SW                                                      [Street]
Atlanta                          [City] , Georgia  30331          [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:                                      02049567

-6A(GA) (0005).02                Page 3 of 14                    Form 3011  1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _K.H._                    02049567

Deed Book **37127** Pg **320**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _____

02049567

VMP®-6A(GA) (0005).02

Page 6 of 14

Form 3011  1/01

Deed Book **37127** Pg  **321**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _K.A._

02049567

-6A(GA) (0005).02

Page 6 of 14

Form 3011  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

Initials: _K_/_

02049567

VMP-6A(GA) (0005).02

Page 7 of 14

Form 3011 1/01

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

02049567

VMP®-6A(GA) (0005).02                    Page 8 of 14                    Form 3011  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _K.H._

02049567

VMP-6A(GA) (0005).02

Page 9 of 14

Form 3011 1/01

Deed Book 37127 Pg 325

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _K·Y_

02049567

VMP®-6A(GA) (0005).02                    Page 10 of 14                    Form 3011  1/01

Deed Book 37127 Pg 326

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: 02049567

-6A(GA) (0005).02     Page 11 of 14     Form 3011 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Deed Book 37127 Pg 328

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Initials: _K-H_

02049567

VMP-6A(GA) (0005).02

Page 13 of 14

Form 3011 1/01

Deed Book 37127 Pg   329

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
KELBY W NELSON          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower


**STATE OF GEORGIA,**                                 County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,          Gowder          County
State of Georgia


02049567

VMP-6A(GA) (0005).02          Page 14 of 14          Form 3011  1/01

GEORGIA -

GRANTOR: **KELBY V NELSON**

LENDER: Synovus Mortgage Corp.

Deed Book 37127 Pg 330
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

DATE OF SECURITY DEED: **February 13, 2004**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
KELBY V NELSON                      -Grantor

_____

_____ (Seal)
                                   -Grantor

_____
Notary Public

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights.  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____        _____
                                         Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
KELBY V NELSON

_____        _____

Deed Book 51269 Pg  144
Filed and Recorded Jun-04-2012 11:21am
2012-0156804
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 1983287060



## ASSIGNMENT OF SECURITY DEED

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SYNOVUS MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by KELBY V. NELSON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC and recorded in Deed Book 37127, Page 316, and/or as Instrument # n/a in the office of the Clerk of the Superior Court of FULTON County, Georgia. .

In witness whereof, the undersigned has hereunto set its hand on ___05, 14___/2012 (MM/DD/YYYY).

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SYNOVUS MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS

By: _Salita Porter_
     Salita Porter                         . VICE PRESIDENT

And: _John Bass_
     John Bass                             VICE PRESIDENT

_Patrick Cole L_
Patrick Coleman Jr.         Witness

_Jalessia Moore_
Jalessia Moore          Witness

STATE OF LOUISIANA    PARISH OF OUACHITA
Before me _05/14_/2012 (MM/DD/YYYY), personally appeared _Salita Porter_, and _John Bass_ as VICE PRESIDENT and VICE PRESIDENT, respectively of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SYNOVUS MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS, who being authorized to do so, executed the foregoing instrument for the purposes therein contained by his/her/their free act and deed. He/she/they is (are) personally known to me.

_Helen P. Tubbs_
Helen P. Tubbs
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

HELEN P. TUBBS, NOTARY PUBLIC
MOREHOUSE, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 40392

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS 16484588 -- CHASE  CJ3790594  MIN 100085600020495670 MERS PHONE 1-888-679-MERS
FRMGA1

*16484588*

Exhibit C

Deed Book 56759 Pg 110
Filed and Recorded Oct-24-2016 09:33am
2016-0308105
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

When Recorded Return To:
JPMorgan Chase Bank
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Client Loan # 1983287060



## ASSIGNMENT OF SECURITY DEED

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE, MS #100, GREENVILLE, SC 29601, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **KELBY V. NELSON** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SYNOVUS MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS** and recorded in Deed **Book 37127, Page 316 and Document # 2004-0079806** in the office of the Clerk of the Superior Court of **FULTON** County, **Georgia.**

**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand on 10 / 07 / 2016 (MM/DD/YYYY).
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

By: _____
DAISY HARRIS
Vice President

_____
Charlotte Russ          Witness



STATE OF LOUISIANA   PARISH OF OUACHITA
On 10 / 07 / 2016 (MM/DD/YYYY), before me appeared DAISY HARRIS Vice President _____, to me personally known, who did say that he/she/they is/are the _____ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Eva Reese
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

EVA REESE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 17070

**Document Prepared By:** DAISY HARRIS _____, JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203, 800-401-6587
JPMC2 396070866 -- FHLMC FLOW SEP 2016   T2016092819  [C-1] FRMGA1



*D0018379281*

Exhibit D

Deed Book 58806 Pg 505
Filed and Recorded May-21-2018 08:47am
2018-0136495
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Georgia Corrective **COVER PAGE**

Document Type: Assignment of Security Deed

Recording Requested By and
When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #:1983287060 ~003

ASSIGNOR(S) NAME: N/A

ASSIGNEE(S) NAME/ADDRESS:    New Penn Financial, LLC
                            55 Beattie Place, MS#100
                            Greenville, SC 29601

Property Address:
1699 NISKEY LAKE RD SW
ATLANTA, GA 30331

JPCAR SPCAR AZE13138658 CPA_CVRPG.ptk

Deed Book 58806 Pg 506

After recording return to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
4400 ALPHA ROAD
DALLAS, TX 75244-4505

———————————————[Space Above This Line For Recording Data]———————————————

Loan No.: 1983287060

# GEORGIA
# CORRECTIVE ASSIGNMENT OF SECURITY DEED

This Corrective Assignment is made to correct that certain Assignment recorded on October 24, 2016 as Instrument No. 2016-0308105, or in Book 56759 and Page 110 in the Office of the Fulton County Register of Deeds wherein, by error or mistake, the Notary Section was referenced in error. This Corrective Assignment is intended to confirm the Assignment in all other respects and shall relate back to the effective date of the Assignment.

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Security Deed (herein "Assignor") has this day transferred, sold, assigned, conveyed and set over to **New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing**, (herein "Assignee"), whose address is **55 Beattie Place, MS #100, Greenville, SC 29601**, as Assignee, its successors, representative and assigns, all its rights, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by **KELBY V NELSON** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR SYNOVUS MORTGAGE CORP, ITS SUCCESSORS AND ASSIGNS**, dated February 13, 2004 and recorded on **February 27, 2004.**

Property Address: **1699 NISKEY LAKE ROAD SW, ATLANTA, GA 30331**

such Security Deed having been given to secure payment of **Three Hundred Twenty Three Thousand and 00/100ths ($323,000.00)** which Security Deed is of record in Book, Volume or Liber No. **37127**, at Page **316** (or as No. **2004-0079806**) in the Office of the Superior County Clerk for **FULTON** County, State of Georgia, and all rights accrued or to accrue under such Security Deed.

---

Georgia Corrective Assignment of Security Deed
JPMorgan Chase Bank N.A. Project W2657

Page 1 of 2

C73108GA 07/13



*1-418146*



*1983287060*

Deed Book 58806 Pg 507
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

IN WITNESS WHEREOF, the undersigned Assignor has hereunto set its hand and seal this _4th_ day of _May 2018_.

SIGNED, SEALED AND DELIVERED IN THE PRESENCE OF:

Unofficial Witness

**Angel Anderson**
(Printed Name)

Unofficial Witness

**Joshua McClinton**
(Printed Name)

Notary Public     Katrina Marie Johnson  68375
My Commission Expires: lifetime

**Ouachita**
County

**Louisiana**
State

Assignor:
**JPMorgan Chase Bank, National Association**

By: _____

**Donald Ross**
Its: **Vice President**

Deed Book 59460 Pg 342
Filed and Recorded Nov-21-2018 09:07am
2018-0304544
Georgia Intangible Tax Paid $237.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

When recorded mail to:       11956034
FAMS-DTO Rec
3 First American Way
Santa Ana, CA 92707
    Shellpo      | 737.2      | PR DOCS
R1    Nelson            | E-Record

GA SMS No 578141969 Mod
Prepared by:
Matthew Machac
Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 (MS 157)
Greenville, SC 29601
Telephone: 866-825-2174

_____ [Space Above This Line For Recording Data] _____
**Modification Agreement**
**Document Date:** 10/22/2018

Taxes based in the amount of $237.00 based on $78,783.59

**Original Mortgagor:** Kelby V Nelson
**Address:** 1699 Niskey Lake Rd, Atlanta, GA. 30331
**Original Mortgagee:** SYNOVUS MORTGAGE CORP.
**Present Holder of the Note and Lien:** New Penn Financial, LLC d/b/a Shellpoint Mortgage
Servicing
**Holder's Address:** c/o New Penn Financial, LLC D/B/A Shellpoint Mortgage Servicing
            55 Beattie Place Suite 110 Greenville, SC 29601 **(Greenville County)**
**Original Loan Amount:** $323,000.00
**Current Unpaid Balance:** $209,034.70
**New Money (Cap Amount):** $78,783.59
**New Unpaid Balance:** $287,818.29
**County & State:** FULTON, GA
**Recorded Original Mortgage** on 2/27/2007, Instrument #: 2004-0079806, Book: 37127, Page:
316
**Parcel #:** 14F-0045- LL-109-2
**Legal Description:** See Attached Exhibit "A"

Exhibit F

Deed Book 59460 Pg 343

Upon recording return to:
Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 (MS 157)
Greenville, SC 29601
Telephone: 866-825-2174
Loan Number: 0578141969
NMLS #: 3013

[Space Above This Line For Recording Data]

# MODIFICATION AGREEMENT

Borrower ("I"): Kelby V Nelson
Lender or Servicer ("Lender"): Shellpoint Mortgage Servicing ("Shellpoint")
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note: 02/13/2004
Loan Number: 0578141969
Property Address ("Property"): 1699 Niskey Lake Rd, Atlanta, GA 30331

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return the original versions of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B.  The Property has not been condemned.

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program")).

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

    G.  I have made or will make all payments required under a Trial Period Plan.

    H.  I, Kelby V Nelson, may receive a discharge in a bankruptcy proceeding after signing the Note and Mortgage/Deed of Trust. I and the Lender acknowledge and agree that this Agreement is not an attempt to collect, recover, enforce, or offset this indebtedness against me personally, does not affect the discharge of my personal liability, and shall not be construed as a waiver of the discharge or an attempt to revive personal liability for this indebtedness. I understand that I am not obligated to enter into this Agreement and that I am entering into this Agreement voluntarily and with no coercion or pressure from the Lender, for the sole purpose of retaining the Property. I and the Lender acknowledge and agree that the Mortgage/Deed of Trust is an enforceable lien on the Property, that this Agreement shall not prejudice the lien in any way, and that the Lender's sole recourse is the enforcement of its lien on the Property and any action which may exist in relation to the Property itself.

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan Number: 0578141969
MODIFICATION AGREEMENT                    *(page 1 of 5 pages)*            P9377W00200010 I000178 S-SFRECS20 L-1028 A-0578141969

Deed Book 59460 Pg 344

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date, as set fourth in Section 3, has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/01/2018 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect. The first modified payment will be due on 11/01/2018.

   A. The Maturity Date will be 10/01/2058.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $287,818.29 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of 3.5% will begin to accrue on the New Principal Balance as of 10/01/2018 and the first new monthly payment on the New Principal Balance will be due on 11/01/2018. My payment schedule for the modified Loan is as follows:

| Number of Monthly Payments | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 3.5% | 10/01/2018 | $1,114.98 | $505.66 May adjust periodically | $1,620.64 May adjust periodically | 11/01/2018 |

*The escrow payments may be adjusted periodically in accordance with applicable law; therefore, my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that if I have a pay option adjustable rate mortgage loan, upon modification the minimum monthly payment option, the interest-only, or any other payment options will no longer be offered. The monthly payments, as described in the above payment schedule for my modified Loan, will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

   D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

   E. If a default rate of interest is permitted under the Loan Documents, then in the event of default, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I understand and acknowledge that:

   A. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the Divorce Decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing.

   B. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

Loan Number: 0578141969
MODIFICATION AGREEMENT          *(page 2 of 5 pages)*

C.  I must comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. 

D.  This Agreement constitutes notice that the Lender's waiver as to payment of escrow items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G.  As of the Modification Effective Date, the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H.  As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J.  I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

K.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L.  Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable)

Loan Number: 0578141969
MODIFICATION AGREEMENT          *(page 3 of 5 pages)*          P9377W00200010 I000180 S-SFRECS20 L-1028 A-0578141969

Deed Book 59460 Pg 346

mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  The mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

O.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

Loan Number: 0578141969
MODIFICATION AGREEMENT                  *(page 4 of 5 pages)*

Space Below this Line for Individual Acknowledgement

Kelby V Nelson _____ (Seal) 10/29/18 (Date) Deed Book 59460 Pg 347

Signed, acknowledged and delivered in the presence of:

Witness _____ (Seal)
Witness _____ (Seal)

State of GEORGIA
County of FULTON

I certify that the following person(s) KELBY V. NELSON and _____ personally appeared before me this 29 day of OCT , 20 18 , and [ ] I have personal knowledge of the identity of the principal(s), [X] I have seen satisfactory evidence of the principal's identity, by a current state or federal identification evidence of the principal's identity photograph in the form of a DRIVERS LICENSE , or [ ] credible witness has sworn to the identity of the principal(s); each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

Witness my hand and official seal, this 29 day of OCT , 20 18.

Notary Signature _____ (Seal)
Witness _____ (Seal)
Typed/Printed Name: CICELY C. THORNTON
Notary Public, State of: GEORGIA
(VA Notaries) Reg. No.: _____
My Commission Expires: 4/20/19

Space Below this Line for Corporate Acknowledgement

Authorized Signer (Lender)Title _____ Tochivas Austin (Seal) Assistant Secretary New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing

Signed, acknowledged and delivered in the presence of: Tochivas Austin

State of SC
County of Greenville

I certify Tochivas Austin personally appeared before me this 30 day of October , 20 18 and acknowledged that he or she is an authorized signer for New Penn Financial dba Shellpoint Mortgage Servicing. I have personal knowledge of the identity of said officer, acknowledging to me that he or she voluntarily signed the foregoing document on behalf of the corporation for the purposes stated therein and in the capacity indicated.

Witness my hand and official seal, this 30 day of October , 20 18

Notary Signature Pamela Rowell (Seal)
Witness _____ (Seal)
Typed/Printed Name: Pamela Rowell (Official Seal)
Notary Public, State of: SC
(VA Notaries) Reg. No.: _____
My Commission Expires: 07/18/27

Witness: _____

PAMELA ROWELL
MY COMMISSION
EXPIRES
7/18/2027
NOTARY PUBLIC
SOUTH CAROLINA

Loan Number: 0578141969
MODIFICATION AGREEMENT          (page 5 of 5 pages)          P9377W00200010 I000182 S-SFRECS20 L-1028 A-0578141969

loan # 578141969
Exhibit A

Deed Book 59460 Pg 348
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 45 of the 14th (F.F.) District,
Fulton County, Georgia, being Lot 6 of Subdivision for Curtis E. Paris, as per a plat recorded in Plat Book
57, Page 125, Fulton County, Georgia Records, to which plat reference is made for a more detailed
description. Property is commonly known as 1699 Niskey Lake Road SW, Atlanta, Georgia 30331.

Deed Book 66129 Page 539
Filed and Recorded 09/13/2022 09:02:00 AM
2022-0296854
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 5742807364
7067927936

Parcel ID No.: 14F-0045- LL-052-4
Recording Requested By: Residential RealEstate Review
When Recorded Return To: Residential RealEstate Review, Collateral Document Services, 3217 S. Decker Lake
Drive, Salt Lake City, UT 84119

### CORPORATE ASSIGNMENT OF SECURITY DEED

**Fulton, Georgia**
**Residential RealEstate Review#: 0032135105, 60112**

Date of Assignment: 9/1/22
Assignor: SPECIALIZED LOAN SERVICING LLC, BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY
IN FACT. at C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT
84119
Assignee: Federal Home Loan Mortgage Corporation, as Trustee for Freddie Mac SLST 2022-1 Participation Interest
Trust at c/o SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: KELBY V NELSON To: SYNOVUS MORTGAGE CORP.
Dated: 02-13-2004 Recorded: 02-27-2004 as Instrument No. 2004-0079806, Book/Reel/Liber 37127, Page/Folio 316
In the County of Fulton, State of Georgia.

Parcel ID No.: 14F-0045- LL-052-4

Property Address: 1699 NISKEY LAKE RD SW, ATLANTA, GA 30331

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security
Deed having an original principal sum of $323,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to
the terms contained in said Security Deed.
SPECIALIZED LOAN SERVICING LLC, BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT.
On 9/1/22

By: _____
BRYAN BALL                          (This area for corporate seal)
DOCUMENT CONTROL OFFICER
THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Jennifer C. Brown
Jennifer C. Brown

NOTARY WITNESS

STATE OF Utah
COUNTY OF Salt Lake                        Bryan Ball
                                           Document Control Officer
Subscribed and sworn to (or affirmed) before me on SEP 0 1 2022
to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

RYLIE HEUSER
Notary Public State of Utah
My Commission Expires on:
February 20, 2024
Comm. Number: 710640

*8/18/2022 7:34:54 AM*-13168*-15061*323*GASTATE_MORT_ASSIGN_ASSN

Exhibit G

# FIERI FACIAS



**THE CITY OF ATLANTA, GEORGIA**
VS
**NELSON KELBY**
**AND 14F-0045- LL-052-4**        **1699 NISKEY LAKE RD SW**
1699 NISKEY LAKE RD SW
ATLANTA GA 30331

CFN: 2019-0176491
**GEORGIA, FULTON COUNTY**
**FILED AND RECORDED**

2019  APR  -  26  AM  9:00
**CATHELENE ROBINSON**
**CLERK, SUPERIOR COURT**
**LIEN BOOK**

BOOK  4502    PAGE   325

| YEAR | FIERI FACIAS NUMBER | PROPERTY DESCRIPTION | TAX DISTRICT |
|------|--------------------|-----------------------|--------------|
| 2018 | 1702194 | 14F-0045- LL-052-4<br>1699 NISKEY LAKE RD SW | |

| SOLID WASTE | PENALTY | FIFA | INTEREST | COSTS | TOTAL DUE |
|-------------|---------|------|----------|-------|-----------|
| 542.93 | 0.00 | 10.00 | 15.38 | 0.00 | 568.31 |

**T0 ALL AND SINGULAR THE SHERIFFS AND CONSTABLES OF THIS STATE GREETING:** YOU ARE HEREBY REQUIRED, THAT OF THE GOODS AND CHATTELS, LAND AND TENEMENTS OF THE TAX PAYER NAMED ABOVE, OR THE PROPERTY DESCRIBED ABOVE,  YOU CAUSE TO BE MADE BY LEVY AND SALE SUFFICIENT THEREOF TO MAKE THE SUM OF THE DOLLARS AND CENTS SHOWN ABOVE.  THE AMOUNT OF CITY OF ATLANTA SOLID WASTE  FOR THE ABOVE YEAR ALSO THE FURTHER LEGAL SUM IN  DOLLARS FOR THIS  FI  FA AND SUFFICIENT AMOUNT TO COVER INTEREST ON SAID PRINCIPAL TAX AT THE RATE ALLOWED BY LAW FROM THE DATE THE PRINCIPAL AMOUNT BECAME DUE UNTIL PAID.  TOGETHER WITH ALL COSTS THAT MAY HEREAFTER ACCRUE AND HAVE YOU THE SAID SUM OF MONEY TO BE PAID TO ME UPON COLLECTION THEREOF.  TO BE RENDERED TO THE CITY OF ATLANTA THE PRINCIPAL,  INTEREST  AND COSTS AFORESAID.  AND HAVE YOU THEN AND THERE THIS WRIT.  GIVEN UNDER MY HAND AND OFFICIAL SIGNATURE THIS APRIL   23, 2019.

ARTHUR E. FERDINAND, TAX COMMISSIONER
EX-OFFICIO SHERIFF, FULTON COUNTY, GA

# TRANSFER OF FIERI FACIAS

FOR AND IN CONSIDERATION OF THE SUM OF                    DOLLARS, EQUAL TO THE TAX, COST AND INTEREST DUE THE WITHIN FI.FA.. I HEREBY TRANSFER AND ASSIGN THE SAME TO:

DATE

TAX COMMISSIONER,  EX-OFFICIO SHERIFF
FULTON COUNTY, GA

Exhibit H

## TRANSFER OF FIERI FACIAS



### FIFA RECORDED BOOK   4502   PAGE 325

**THE CITY OF ATLANTA, GEORGIA**

VS

**NELSON KELBY**
And 14F-0045- LL-052-4   1699 NISKEY LAKE RD SW

1699 NISKEY LAKE RD SW
ATLANTA GA 30331

CFN# 2019-0194412
GEORGIA, FULTON COUNTY
FILED AND RECORDED

2019  MAY – 09   AM  9:00
CATHELENE ROBINSON
CLERK, SUPERIOR COURT
LIEN BOOK

BOOK    4520    PAGE    670

| YEAR | FIERI FACIAS NUMBER | PROPERTY DESCRIPTION | TAX DISTRICT |
|------|--------------------|--------------------|--------------|
| 2018 | 1702194 | 14F-0045- LL-052-4 | |
| | | 1699 NISKEY LAKE RD SW | |

**SOLID WASTE**

FOR AND IN CONSIDERATION OF THE SUM OF             $563.31 DOLLARS, EQUAL TO THE TAX, COST AND
INTEREST DUE THE WITHIN FI FA.. I HEREBY TRANSFER AND ASSIGN THE SAME TO:

FIG AS CUSTODIAN FOR FIG GA13, LLC
AND SECURED PARTY
P.O. BOX 54226
NEW ORLEANS, LA 70154-4226
(844) 729-5436
(904) 758-5311

THIS 27TH DAY OF APRIL   , 2019

_____
Arthur E. Ferdinand, TAX COMMISSIONER
EX-OFFICIO SHERIFF, FULTON COUNTY, GA

**BATCH:** 8878

Exhibit I